**This order is SIGNED.**

**Dated: October 27, 2017**



**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| In re:<br><br>Sonia Ordonez,<br><br>Debtor. | Bankruptcy Number: 10-37596<br><br>Chapter 7<br><br>Judge William T. Thurman |
|---|---|

**MEMORANDUM DECISION**

This matter before the Court is the Debtor's Motion to Convert Case to Chapter 13 (the "Motion to Convert"). The Court conducted an evidentiary hearing on the Debtor's Motion to Convert on September 15, 2017, which was continued to September 29, 2017 and then to October 26, 2017. Mark Rose appeared on behalf of the chapter 7 trustee, Stephen Rupp. The trustee filed a response to the Motion to Convert. George Hofmann and Rick Roskelley appeared on behalf of ABM Aviation, Inc. ("ABM") a successor to Air Serv Corporation, the defendant in

an employment discrimination lawsuit being prosecuted by the Debtor in district court. Sonia Ordonez (the "Debtor") appeared pro se.

On September 27, 2017, ABM filed a notice of transfer of claim from Latino Cash Center, LLC and thus succeeded to the rights of that creditor in the Debtor's bankruptcy. ABM is apparently an affiliate of the Debtor's former employer and a defendant in the employment discrimination lawsuit. ABM filed an objection to the Motion to Convert on September 28, 2017 (the "Creditor's Objection").On October 20, 2017, the Debtor filed Debtor's Opposition to Air-Serv Corporation Now ABM's Objection to Debtor's Motion to Convert Chapter 7 to Chapter 13 (the "Debtor's Opposition"). The court heard final arguments from all parties on October 26, 2017.

After review of the pleadings filed, and based upon the oral arguments made by the parties at the hearing, the Court took the matter under advisement. The Court now issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014(c).

**I. Jurisdiction and Venue**

The jurisdiction of this Court is properly invoked under 28 U.S. C. § 1334. This is a core proceeding within the meaning of  28 U.S.C. § 157(b)(2) and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.  Notice of all of the hearings is found to be adequate in all respects.

**II. Facts and Procedural History**

The Debtor filed a voluntary chapter 7 petition on December 21, 2010. A bankruptcy petition preparer assisted her in filing the paperwork. The Debtor marked "none" where she was instructed to "list all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case" in the Statement of Financial Affairs.

In a letter (the "Letter" or "Exhibit 1") written to Mr. Stephen Rupp, the chapter 7 trustee, dated February 15, 2010 (the Debtor testified that the date was a typo, the year was 2011, as evidenced by the fact that the letter was written to the bankruptcy trustee after she had filed bankruptcy), the Debtor referred to an investigation before the Labor Commission. The Court quotes the pertinent section of the Letter, noting that some of the syntax reflects a language barrier:

> 3. I do usually work two full times jobs; however, I was unfairly terminated from one of my two works, which still is under investigation in Labor Commission.
> 4. Based on the hope that Labor Commission is helping me to recuperate my second job my debts increased every time more and more until this financial collapse.
> 5. Because of Labor Commission still has not given the date about when I will return to work, since 2010 I began searching for work without any success.

It does not appear from what has been presented to the court that the chapter 7 trustee inquired further about the action before the Labor Commission. The Court notes that the Debtor's statements suggest that the only remedy she was seeking was to return to work.

On January 24, 2013, the Debtor filed a lawsuit against her former employer in the United States District Court, (the "District Court") in which she alleged racial discrimination and sexual harassment, and made a claim for compensatory, emotional, economic and punitive damages,

with the amounts to be proven later (the "Lawsuit") based on events that occurred before the bankruptcy was filed. It does not appear that the Trustee was informed of the Lawsuit before the case was closed.

The Debtor's bankruptcy case was closed on March 19, 2014. The Trustee's Final Account, which the Court takes judicial notice of, shows that total distributions to claimants was $1,897.66 and $14,643.55 in claims were discharged without payment. Assets abandoned were $156,089.00, which represents the value of the Debtor's home.

More than three years later, on June 19, 2017, the Debtor filed a motion to reopen her bankruptcy case in order to fix what she referred to as an omission. She also requested that the filing fee to reopen a case be waived due to her "severe poverty condition." That motion was granted and the fee was waived by order entered July 27, 2017. However, as of the date of this hearing, no amendments to the Debtor's schedules have been filed. The omitted asset, the Lawsuit or employment claim, has been discussed at several hearings and in the pleadings, but is still not listed in the bankruptcy schedules.

Shortly after the case was reopened, the Debtor filed the Motion to Convert to chapter 13, which is the only matter before the Court at this time. The chapter 7 trustee filed a response to the Motion to Convert, and his attorney later stated at a hearing that he does not oppose the Motion to Convert. ABM, who now has standing in this case as a creditor, has objected to the Motion to Convert. The Debtor has suggested that this is somehow unlawful. However, the practice of purchasing a proof of claim to become a creditor in a bankruptcy case is allowed, and based on what has been presented here, there is nothing improper about ABM's actions in

purchasing a claim and obtaining standing here. ABM purchased Claim 1-1 and Claim 2-1 from Latino Cash Center, LLC. Those claims were filed in January and May, 2011. The Trustee's Final Report states that $55.35 was paid on each claim, for a total of $110.70. Despite the Debtor's allegations that the claims were somehow improper, the Court finds that the claims were unchallenged when they were filed, and for six years thereafter. Since purchasing both claims, ABM has withdrawn Claim 1-1 because it was duplicative. Claim 2-1 remains a valid claim, and its transfer gives ABM standing in this case.

While the matter before the Court is the Motion to Convert, other issues such as abandonment and exemption of the asset have also been discussed. In the interest of dealing with all matters most efficiently, the Court will also explain the reasons for its holdings on these other topics as well.

### III. Abandonment

There has been some discussion about whether the chapter 7 trustee knew of the Debtor's claims against her former employer and therefore abandoned the claims or Lawsuit as an asset when the case was closed in 2014. While the claims were not disclosed in the schedules, the Debtor did refer to a proceeding before the Labor Commission in the Letter to the trustee (Exhibit 1), as quoted above. The question is whether this reference was enough to result in abandonment of the asset. If it was abandoned, then, it might be appropriate to grant the Debtor's motion and allow her to proceed in chapter 13. However, there are other issues in conversion that will also be addressed herein.

When property is abandoned, it "reverts to the debtor and stands as if no bankruptcy petition was filed."[1] There are several ways property can be abandoned from the bankruptcy estate. Property may be abandoned by a trustee of the case under § 554(a) and (b)[2] only if it is determined to be "burdensome to the estate or [] of inconsequential value and benefit to the estate." There is no basis to find that the Lawsuit was burdensome to the estate or of inconsequential value either in 2013 when it was filed or today, and so that condition precedent in § 554 is not met.

If property is eligible for abandonment, § 554(a) and (b) requires notice to creditors and the opportunity for a hearing. This requirement for notice and a hearing is not merely a formality. These procedures also "provide an opportunity for any potential opponent to the abandonment of such property to file objections and be heard by the Court."[3] If a trustee wishes to abandon an asset, he must give notice to creditors, who then have an opportunity to object to the abandonment and argue that the asset does have value to the estate at a hearing. The Letter written by the Debtor did not go to creditors, and they did not have an opportunity to object to an abandonment of her claims before the Labor Commission or the Lawsuit she eventually filed. Even if the trustee intended to abandon the Lawsuit, he could not have done so without following

---

[1] *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm*, 502 U.S. 410 (1992).

[2] Unless otherwise stated, all references to sections, refer to Title 11, United States Code.

[3] *In re Cook*, 520 F. App'x 697, 702 (10th Cir. 2013) (unpublished opinion).

the statutory requirements. "Intent to abandon, without prior notice to creditors, is insufficient to establish abandonment."[4] Accordingly, the Lawsuit was not abandoned under § 554(a) or (b).

An asset may be abandoned under § 554(c) if it was "scheduled under section 521(a)(1) of this title [and] not otherwise administered at the time of the closing of a case." As noted, the Lawsuit was not listed on the Debtor's schedules, and so could not have been abandoned.[5] "Because [the debtor] did not list the claims in her asset schedules, the trustee neither administered them nor abandoned them at the close of the bankruptcy case, and they remained the property of the bankruptcy estate." *Brumfiel v. U.S. Bank*, 618 Fed. Appx. 933, 937 (10th Cir. 2015) (unpublished opinion).

On the petition date, the Debtor's claims were before the Labor Commission. Before the case was closed, the Debtor had filed the Lawsuit and claimed money damages. The Debtor had the responsibility to amend her schedules and formally disclose the Lawsuit to the trustee. "A cause of action that was never listed in a debtor's bankruptcy schedules and not administered by the trustee is not abandoned to the debtor and remains property of the estate, even after the case

---

[4]*Id*.

[5]*See Milligan v. Reed*, 410 Fed.Appx. 131 (10th Cir. 2011) (finding that legal claims that were not scheduled by the debtor could also not be abandoned, but remained property of the bankruptcy estate).

is closed, and even if the case trustee otherwise has knowledge of the claims."[6] Her failure to amend her schedules meant that the asset could not be abandoned under § 554(c).

As directed by statute, "Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." § 554(d). Accordingly, the claim and the Lawsuit were not abandoned and remained property of the estate.

**IV. Exemption**

Although not central to the matter before the court, the issue of exemptions was brought up and the Court deems it appropriate to opine on that here. The Debtor has not claimed an exemption in the Lawsuit; indeed, she has not amended her schedules to include the Lawsuit as an asset at all. Nevertheless, there has been some discussion about whether the Lawsuit could be exempt from property of the estate making the objection to conversion less compelling. Because the Debtor has not claimed an exemption, the Trustee has not formally objected to the exemption. The Court asked for briefing on the question of an exemption, and the Trustee supplied a document entitled "Trustee's Brief on Exemption Issues." Rather than object to the Debtor's claim of exemption (which has not been claimed), the Trustee provided "an objective analysis of all possible exemption issues." Pursuant to Bankruptcy Rule of Procedure 7015(b)(1),

---

[6] *In re Wright*, 2009 WL 3833811, Oct. 30, 2009 (Bankr. D. N.M. 2009) (internal citation omitted) (citing to *Jeffery v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995) (rejecting appellants' contention that the cause of action was abandoned by operation of law because the case trustee knew about the cause of action when he filed the report of no assets, stating that "[t]he the law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules")).

a court may permit a party to raise issues outside the pleadings and deem the pleadings to be amended to include the new issues. The Court chooses to allow that in this instance, and to give the parties some indication of how the court views the exemption issues.

The Debtor's brief on the exemption question did not cite any law in her favor, but merely provided a history of the events underlying the Lawsuit. The Debtor filed a subsequent brief on October 20, 2017 which also made reference to the exemption issue. The Court will address the issues raised. The Debtor has not amended Schedule C to actually claim an exemption, and nowhere in her papers does she give a citation to any specific exemption allowed by Utah law. While the Court allows pro se debtors some leeway, it cannot make a pro se debtor's argument for her. Thus, the Court responds only to the points raised by the Debtor. Further, even with the Court's own research, it cannot find an exemption that is available to the Debtor for her claim or the lawsuit.

Debtors are entitled to exempt certain assets from the bankruptcy estate. Federal exemptions are listed in § 522(d), but they are only available in states which have not opted out of those exemptions. Utah has opted out of federal exemptions, and so only the state exemptions can be considered. *See* Utah Code Ann. § 78B-5-513. The Debtor has raised arguments that some of the federal exemptions may be applicable to her case. Without deciding that issue, the Court notes that federal exemptions are simply not available in Utah, and this Court does not have authority to override the exemption statutes written by the state legislature. Even if the law were to be changed through proper procedures, any changes made would most likely not be

retroactive, but would apply only to cases arising after the change had been made. No federal exemptions are available for the Debtor's Lawsuit.

The Debtor has also argued that the Lawsuit may be exempted under § 523(a)(6), because sexual harassment judgments are exempt from discharge as "willful and malicious injury". This is a misunderstanding of the law. Section 523(a)(6) prevents certain judgments against a debtor from being discharged as a debt to a creditor. It has no effect on a claim against a company that is being sued by a debtor. Accordingly, this section is not applicable.

The Debtor gave the Court citations to cases that she hopes will support her argument, but they are unavailing. The debtor in *In re Ciotta*, 222 B.R. 626 (Bankr. C.D. Cal. 1998) did argue that the court should exempt her prepetition sexual harassment lawsuit as exempt under California's exemption for personal bodily injury, but the court held that the debtor had not shown any bodily injury.

The debtor in *In re Webb*, 210 B.R. 266 (Bankr. E.D. Va. 1997) also claimed that an employment discrimination lawsuit was exempt as a personal injury claim. In facts specific to that case, the court found that the damages sought were "personal injury" damages within the meaning of the Virginia statute, and concluded that the settlement proceeds were exempt. The Virginia court expanded the term "personal injury" to include damage to the psyche, and noted that 'personal injury' is a much broader term than 'bodily injury.' *Webb,* 210 B.R. at 272. An additional case cited by the Debtor, *In re Dobbins*, No. 99-5-9684-JS (Bankr. D. Md. April 7, 2000) is very similar to *In re Webb*, and allowed a claim of bankruptcy exemption for proceeds of a lawsuit for sexual harassment as injury to the person. As in *Webb*, the *Dobbins* court

explained that a personal injury includes damage to the psyche and mind that is not included in the term "bodily injury."

The Utah exemption statute refers only to "bodily injury" and further limits the exemption to amounts that are compensatory. *See* Utah Code Ann. § 78B-5-505(1)(a)(x). The Court has no grounds to expand the definition of bodily injury to include mental suffering, and notes that the Debtor did not make a claim for personal injury or bodily injury in her complaint in the Lawsuit. The *Webb* and *Dobbins* cases are not persuasive on the facts before this Court, and both of them rely on state laws that are different than the laws of Utah. However, since the matter is not squarely before the Court, the Court elects not to make any findings or conclusions at this time, but just to give the parties the benefit of the Court's consideration of their arguments.

**V. Conversion**

A chapter 7 debtor's right to convert her case is granted and limited by § 706. Subparagraph (a) states that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208 or 1307 of this title." However, "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." § 706(d). In order to grant the Motion to Convert, the Court must find that the Debtor is eligible to be a debtor under chapter 13. The Court notes that the Debtor has not provided any reason to convert her case in her written Motion to Convert. In its entirety, the Motion to Convert states: "Chapter 7 convert to Chapter 13." Furthermore, the Court has not been presented with any evidence that the Debtor could perform in a chapter 13 case.

For the following reasons the Court DENIES the Debtor's Motion to Convert.

### A. No Evidence of Regular Income

As stated above, in her Motion to Reopen Case, the Debtor requested a waiver of the court fee due to her "extreme poverty condition . . . in which I receive S.S.D." The Debtor has stated at a hearing that she would be able to pay $200 or $250 per month in a chapter 13 plan. However, she has not filed a plan, nor an updated budget, nor any evidence of current income. Her written statement to this Court about her inability to pay the fee to reopen a case is inconsistent with her verbal statements about her ability to fund a chapter 13 plan. The Debtor has had three months since her case was reopened to provide any evidence or other indication of regular income, and has not done so. There should be some basis upon which the Court can evaluate whether a plan is feasible and identifying projected income with a current budget (i.e. schedules I and J) would suffice.

### B. Conversion would be Prejudicial to Creditors

Courts have authority under § 105(a) to take action necessary to "prevent an abuse of process." This authority is sufficient to authorize denial of a motion to convert filed under § 706 in lieu of authorizing a conversion that may very well be converted back to chapter 7 or dismissed "for cause" once it has been converted to chapter 13. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).

One of the reasons a chapter 13 case may be converted or dismissed is for "unreasonable delay by the debtor that is prejudicial to creditors." § 1307(c)(1). ABM has represented in its Creditor's Objection that it has offered a settlement amount to the chapter 7 trustee that would

pay in full all of the unpaid claims against the Debtor's bankruptcy estate. In reply, the Debtor has offered statements that she could perform in a chapter 13 plan with payments of $200 or $250 per month, without filing any documents or other evidence that shows she has the ability to make those payments over a period of several years. Further, a hypothetical chapter 13 plan for her could then be a 36 month term at $250 per month. That would at most pay $9000 which is not the full payment that creditors could receive now if the Trustee could settle the Lawsuit.

Accordingly, the Court finds that creditors would benefit more from an immediate settlement with the chapter 7 trustee than from a case conversion to chapter 13.

### C. Bad Faith Conduct

"[T]he federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).

When using the term "bad faith," the Court is not referring to the Debtor's character. The term "bad faith" refers to actions that do not accord with the bankruptcy purpose of maximizing the distribution to creditors while also giving a debtor a fresh start by discharging debts. It is not a negative statement about an individual's character or behavior.

Concealing an asset is evidence of bad faith conduct. *See id*. The Debtor did not disclose any potential claims that she had or any proceeding before the Labor Commission in her bankruptcy schedules. She wrote the Letter in which she referred to the proceeding before the Labor Commission, but she did not inform the chapter 7 trustee of the Lawsuit when it was filed in 2013. Further, the Letter she wrote to the Trustee did not contain any statements that she had a

pending lawsuit or that she was making a substantial pre-bankruptcy claim against her former employer. It was inadequate to put the Trustee on notice that a claim existed. She did not identify the Lawsuit when she filed her Motion to Reopen Case in July of this year. The Court was apprised of its existence by the trustee. She has not amended her schedules to include the Lawsuit as an asset, though her case was opened months ago for that purpose. The Letter did state that she hoped to be reinstated in employment, but contained no reference of the claim.

The timing of a debtor's efforts to include an omitted asset may also be evidence of bad faith. ABM alleges in its Creditor's Objection that the Debtor moved to reopen her bankruptcy case after ABM had filed a motion to have the Debtor's claims judicially estopped in the United States District Court where the Lawsuit was pending, because she had not listed it in her bankruptcy. It does not appear that the Debtor was prompted to seek reopening of her case for any reason other than to proceed in the Lawsuit for her own benefit and was prompted to do so by the fear of having the Lawsuit dismissed over her failure to schedule it. She admits as much in the Debtor's Opposition, when she states that she moved to reopen her bankruptcy after the matter was raised in the Lawsuit in district court.

ABM has also claimed that the Debtor filed the Motion to Convert to chapter 13 once it became clear that the chapter 7 trustee was willing to settle with ABM. The Debtor has stated that she is worried the chapter 7 trustee will settle the Lawsuit, and that she strongly wants a jury to hear the case. In her brief about the exemption issue, the Debtor stated that she filed the Motion to Convert "in order to preserve my right to have a jury trial in Federal District Court." Then again, in the Debtor's Opposition, she states that she filed the Motion to Convert "in order

to preserve the legal control on my multiple causes of action filed in Federal District Court, prove my case before a Jury, and finally make Justice." Based on these statements, the Court finds that her motivation to convert her case is to retain control of the Lawsuit. Retaining an asset (as here, property of the bankruptcy estate) at the expense of creditors is also evidence of bad faith. Chapter 7 debtors agree to turn over all their assets to the trustee for administration in exchange for a discharge, which the Debtor received. She cannot now seek to retain an asset that she should have identified seven years ago.

      The Debtor has asked that she not be penalized for a mistake of omission, and stated that she did not know the reporting requirements or she would have followed them. It appears that the Debtor may believe that if she had disclosed the Lawsuit in 2013, she would have been able to keep control of it. This is most likely incorrect. If the Debtor had disclosed the Lawsuit in 2013, the Trustee would have administered it as an asset of the estate at that time. For the reasons stated above, it is unlikely the Lawsuit would have been abandoned even if disclosed. She is not being penalized for a mistake. The result would be the same whether she disclosed the Lawsuit in 2013 or 2017 – it is an asset of the estate and the Trustee takes control of it, as only the Trustee can administer property of the estate.[7] The Debtor's failure to report the Lawsuit affects only the timing and not the result.

      The Court notes that the debtor is proceeding pro se. The Court has given the Debtor multiple opportunities to engage counsel, has continued hearings on this matter and given her

---

[7] §§363(b) and 541(a)(1).

15

multiple extensions to file briefs. The Court is sympathetic to the Debtor's position, however, the Court as previously stated cannot find that the Lawsuit or claim was ever abandoned or that the current Motion to Convert was filed in good faith, concluding that the principles outlined in *Marrama* are persuasive here. Except for the sanctions motion which the court will address next, all that is before the Court today is the Debtor's Motion to Convert to chapter 13.

## V. Motion for Sanctions

The Debtor has moved for sanctions against ABM, based on actions take in the Lawsuit. She did not file a separate motion for sanctions, but made the request in the Debtor's Opposition. This Court has no jurisdiction over actions or claims in the Lawsuit, which are all being handled in the district court. Accordingly, the Debtor's Motion for Sanctions is DENIED due to lack of jurisdiction.

## VI. Conclusion

For all these reasons, the Debtor's Motion to Convert and the Motion for Sanctions should be DENIED. The Court will prepare the order.

-----------------------------------END OF DOCUMENT-------------------------------------

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** shall be effected on the parties listed below.

Sonia Ordonez
406 East Broadway, #150
Salt Lake City, UT 84111
    *Debtor*

Stephen W. Rupp tr
15 West South Temple, Suite 1000
Salt Lake City, UT 84101
    *Chapter 7 trustee*

Mark C. Rose
McKAY, BURTON & THURMAN, P.C.
15 West South Temple, Suite 1000
Salt Lake City, UT 84101
    *Attorney for chapter 7 trustee*

George Hofmann
Jeffrey L. Trousdale
Cohne Kinghorn, P.C.
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
    *Attorney for creditor*